The Chancellor.
An application is made to the court, on the part of the defendant, to suppress certain depositions, which have been taken by the complainant, to impeach the character of the defendant for truth and veracity, and to restrain the taking of further evidence upon that point. The design of the evidence, it is admitted, is to impair or destroy the effect of the defendant’s answer as evidence in the cause. And the material question submitted for the decision of the court is, whether it is competent for the complainant to discredit the answer of a defendant, or to impair its effect, by impeaching the general character of the defendant for truth and veracity. It is not denied that this mode of avoiding the force of the answer is a novel one. The industry and research of counsel have furnished the court with no instance of its adoption, or of an attempt to introduce it, either in England or in this state. For two centuries, at least, the rule has been perfectly established, that the direct and positive answer of the defendant responsive to the charges of the bill, must prevail unless overcome by two witnesses, or by one witness supported by circumstances, or by equivalent evidence. 2 Story’s Eq. Jur., § 1528; 3 Greenl. Ev., § 288.
The rule was recognised as a familiar and well settled *299 principle in Hobbs v. Norton, 1 Vern. 137 (1682), and in Alam v. Jourdan, Ibid. 161 (1688). In numerous cases, from that time to the present, instances will be found of attempts to evade or limit the operation of the principle. Thus it was held in Speed v. Martin, Comyns 587, that where there was a single witness against the answer, the matter would be sent to be tried at law, though the rule is now settled otherwise. Christ Church v. Widdrington, 2 Vern. 282; 2 Story’s Eq. Jur., § 1528.
It has also been settled that the principle extends this effect only to those parts of the answer which contain positive allegations as to facts within the defendant’s knowledge, and which are responsive to the charges of the bill. It is also a recognised and familiar principle, and will be found adopted in many cases, that the credibility of the answer may be impeached by internal evidence, and may be within itself so inconsistent and contradictory as to deprive it of the character of a fair answer and of the effect to which it would, otherwise be entitled. It is open to all the tests of truth to which other oral testimony may be subjected, save that the general character of the defendant for truth and veracity cannot be called in question. Where there is merely oath against oath, that of the defendant in his answer must prevail. Mortimer v. Orchard, 2 Vesey 242; Tamlyn’s Ev. 5.
The very fact, that no instance of an attempt even, much less a successful one, to introduce such evidence can be found in the reported cases in the English courts or in the elementary treatises, shows most conclusively that the evidence has been universally regarded as inadmissible and as a clear violation of the settled principle of the court. It is incredible, that amid the multitude of reported cases where charges of gross fraud and imposition have failed of being established by reason of their being denied by the defendant’s answer, that this mode of overcoming its effect should not have suggested itself to the minds of counsel, and been urged upon the attention of the court, if it had been deemed in any degree an open question. That upon a point so *300 familiar and obvious there should be no ¡adjudication, can be accounted for only upon the hypothesis that it has never been deemed a question! The fundamental principle of equity already alluded to, that the answer of the defendant cannot be overcome by the testimony of a single witness because it is only oath against oath, of necessity excludes the admission pf extrinsic evidence to discredit the answer by impeaching the credibility of the defendant. Its admission is a subversion of the principle itself, and so the subject seems, whenever it has been alluded to, to have been regarded. In Clark's Executor v. Van Riemsdyk, 9 Cranch 160, Chief Justice Marshall says “ the reason upon which the general rule requiring two witnesses, or one witness with circumstances, to outweigh an answer, is this. The plaintiff calls upon the defendant to answer an allegation he makes, and thereby admits the answer to be evidence. If it is testimony, it is equal to the testimony of any other witness; and as the plaintiff cannot prevail if the balance of jmoof be not in his favor, he must have circumstances in addition to his single witness in order to turn the balance.” And in Field v. Holland, 6 Cranch 24, the same learned judge said, “ the plaintiffs call upon the defendant for a discovery; they aver that the judgments were discharged, and expressly require him to answer this allegation. They cannot now be allowed to say that this answer is no testimony.” In Clason v. Morris, 10 Johns. R. 542, Mr. Justice Thompson, in delivering the opinion of the court said, the respondents having thought fit to make the appellant a witness, they are bound by what he discloses, unless it is satisfactorily disproved. The answer is not to be discredited, or any presumption indulged against it, on account of its being the answer of a party interested. In Woodcock v. Bennet, 1 Cowen 743, Mr. Justice Woodworth, delivering the opinion of the Court of Errors, after citing the language of the court in Clason v. Morris, adds, this rule applies to every case where the answrer is within the discovery sought.
In Chambers v. Warren, 13 Illinois 321, the plaintiff had *301 filed a bill of discovery in aid of a suit at law, and upon the trial, having read the defendant’s answer in evidence, attempted to discredit it by impeaching the general reputation of the defendant for truth. The evidence was rejected upon the familiar principle, that a party cannot discredit his own witness by showing that he is unworthy of belief.
It is conceded, that if a party in a suit at law calls the adverse party as a witness, or offers his answer to a bill of discovery as evidence before the jury, he cannot discredit the testimony by proof of general bad character because of the general principle, that a party cannot thus discredit his own witness. It is denied, however, that this principle applies to the answer to a bill for discovery and relief, when used as evidence, on the ground that the defendant answers as a party, not as a witness; or if as a witness, the complainant is compelled to resort to his testimony. As pleading, the answer must stand, and the complainant is put to the proof of the facts in issue; but as evidence, like every other species of evidence, they are liable to be impeached and overthrown. Forsyth v. Clark, 3 Wend. 643.
This is true, but the party in whose favor the witness is examined is never permitted, either at law or in equity, to impeach or overthrow his testimony by assailing his character for truth and veracity.
So far as the answer operates as evidence, its averments are regarded as the testimony of a witness called by the plaintiff. This is the foundation of the principle. The plaintiff calls upon the defendant to answer an allegation of fact which he makes, and thereby admits the answer to be evidence of that fact. If testimony, it is equal to the testimony of any other witness. This is the light in which the subject is constantly presented in the books. 2 Story’s Eq. Jur., § 1528; Price v. Lytton, 3 Russ. 206.
By the established principles of equity, the answer of a defendant, either as a pleading or as evidence, is made to subserve certain purposes irrespective of the character of the defendant. Evidence, therefore, to impeach the defendant’s *302 character, for the purpose of defeating those ends, must be irrelevant and inadmissible.
Analogies will be found at law. Wherever a statute provides that the evidence of a party shall effect a designated purpose, or be prima fade evidence of a given fact, for the mere purpose of defence or protecting the.party’s rights, evidence impeaching the character or destroying the credibility of the witness is immaterial and inadmissible. Powles v. Dilley, 9 Gill 236; Price v. Mazange, 31 Alabama 708; Winne v. Nickerson, 1 Wisconsin 1.
There are two cases in the American courts where the point now under consideration has been directly decided.
In Butler v. Catling, 1 Root 310, a petition in chancery was filed for discovery and relief. The petitioner averred that he had recovered judgment against Butler, and had levied upon land conveyed by Butler to Catling, the defendant, prior to the judgment; that the deed was in reality a pledge for the payment of a debt of less amount than the value of the land, and that the knowledge of that fact lay in the private knowledge of the defendant. Prayer that upon paying the debt, the defendant should reconvey to Butler, and that the defendant should make discovery under oath. Butler having answered, denying the allegations of the petitioner, it was held that his testimony could not be discredited by impeaching his character.
In Salmon v. Clagett, 3 Bland 165, where the point incidentally arose, the Chancellor, in the course of a very elaborate opinion touching the effect of an answer upon the continuance or dissolution of an injunction, said: “ It is no objection to the validity and efficacy of an answer in this respect that the defendant is infamous or a negro, and as such an incompetent witness in ordinary cases. His answer must, notwithstanding, have full credit given to it; since the plaintiff, by calling him into court, has given him a competency to this extent for the purpose of defending himself and protecting his property.”
In Miller v. Tolleson, 1 Harper's Ch. R. 145, it was held, *303 by Chancellor Desaussure, that evidence to impeach the answer of the defendant, by showing directly that the defendant is not to be believed, is admissible. The case was affirmed in the Court of Appeals, and although this question does not seem io have been agitated there, the principle must be presumed to have received the sanction of that court. The bill in that case was filed by a creditor of Tolleson to set aside the sale and purchase of certain slaves, furniture, and land of said Tolleson, on the allegation that they were made to defraud his creditors.
The answers generally denied the frauds. But Tolleson, who was the principal defendant, and upon whom the imputation of fraud chiefly lay, “ was proved by several respectable witnesses (I use the language of the Chancellor) not to be entitled to any credit.” It was objected that it was not proper to receive any evidence to prove the want of credibility of the defendant, because the complainant, by putting him to his oath, gave him credit, which he was not at liberty to attack or deny. The Chancellor said, “this objection, by going too far, defeats itself. It would be absurd and mischievous to admit it, and it is not the rule of the court. . . . . The answer of the defendant, Tolleson, must therefore be put out of the case, because witnesses of indisputable credit have attested to his entire want of credibility. . . . . There is a plain rule on this subject, which is, that the defendant’s answer, if he is not proved to be utterly unworthy of credit, shall have so much weight attached to it that it shall be considered as establishing the truth of what it states in answer to the allegations of the bill, unless contradicted by two witnesses, or by one witness and strong circumstances.” This, it must be admitted, is direct authority in support of the admissibility of the evidence; and the learning and ability of the court by whom the decision was made entitle it to the most respectful consideration.
But the case has some features which detract from the weight of the decision. It is obvious that the point is assumed as settled. Hot an authority is cited; no reason is *304 assigned except the brief one, that the objection by going too far, defeats itself. But why does the objection, by going too .far, defeat itself? The objection is, that a party who makes his adversary a witness in the cause in his own behalf shall not be permitted to discredit his testimony by assailing his general character for truth and veracity. The rule is a familiar one in courts of law and of equity, as applied to .witnesses, and has always been supposed to rest on the soundest principles of morality and justice. And why is it absurd to hold, that when a party places his adversary on the rack, to extort from him evidence in his own favor, he shall be compelled to accept the evidence as it is given? Why should the defendant be compelled to give evidence which shall be deemed conclusive if against himself, but totally unavailing if in his own favor ? The universal rule is, that the admission of a party shall be taken as an entire thing. You must take it with all its limitations and qualifications. You cannot disjoint or dissever it. If you take a part, you must accept the whole. If the admission be añade voluntarily, and be proved in court, the application of the .principle is clear. And if the admission is made under oath by compulsion, at the' instance of the complainant, why is the application of the principle to be rejected as absurd and mischievous ? In order to support the view of the Chancellor, he lays down a very familiar rule with a most importaoat qualification. There is, he says, “ a plain rule on this subject, which is, that the defendant’s answer, if he is not proved to be utterly unworthy of credit, shall have so much weight attached to it that it shall be considered as establishing the truth of what is stated in answer to the allegations of the bill, unless contradicted by two witnesses, or by one witness and strong circumstances.” The court affirm the existence and continual application of the rale thus qualified. The rule without the qualification is a very familiar one, and its existence and continual application for centuries is not disputed. It is to be found in almost every volume of equity reports and in every elementary treatise upon the principles *305 and practice of equity. The earliest reported cases treat it as a well settled fundamental principle. It is dealt with as an axiom in equity science.
But so far as the researches of the counsel or the court in the present case have gone, and they have not been limited, there is no adjudicated case or elementary treatise which makes the force of the answer depend upon the general character of the defendant for truth and veracity. I have found no dictum in support of such qualification, and no trace of its existence, save in the opinion of the learned Chancellor himself.
It is worthy of special notice that the objection to the evidence, as stated by the Chancellor, does not present the precise point of the objection. It is stated to be “because the complainant by putting him to. his oath gave him credit which he was not at liberty to attack o,r deny.” How the sole question is, whether he is at liberty to. attack or deny the credit of the defendant by evidence of his general character for truth and veracity. The counsel did insist upon the objection in the precise form stated by the Chancellor. They insisted that the court were not at liberty to receive any evidence whatever to contradict the answer. And although the Chancellor ostensibly treats the two propositions as distinct, the opinion that he gave shows that he was dealing with the latter objection, rather than the former. To that objection the reason assigned is strictly applicable. By going too far it defeats itself; ■ for if the answer were conclusive, there' would never be any necessity for the production of evidence, and it may be safely admitted, as was alleged, “ that it would be absurd and mischievous to admit it, and that it is not the rule of the court.” These remarks are certainly predicable of the latter proposition, rather than of the one with which the court was professedly dealing. And in confirmation of this view, it is worthy of remark, that this is the precise and only point contained in the abstract of the decision of the court appended to the case. The marginal note of the decision is, that the bill “ was not a bill merely for discovery, *306 and that proof might be received to contradict the answer of the defendant denying the fraud.” That proposition is unquestionably true; but the further position, that the credit of the answer may be destroyed by assailing the general character of the defendant for truth and veracity, is not supported by principle or by authority.
It is further urged that the complainant is not authorized, either by the general practice in equity or by the rule of this court, to- require the answer to be filed without being sworn, except by the consent of the defendant. He is not therefore a witness- of the party’s own choosing, and the complainant is consequently at liberty to discredit his testimony by general evidence of character. It would seem, from the language of some of the books, that if the complainant chooses to dispense with the oath, the court, upon his motion, will require the defendant to answer without oath, even without the consent of the defendant. Cooper’s Eq. Pl. 325; Story's Eq. Pl., § 874.
But in all such cases the dispensation is supposed to be made for the convenience of the defendant, and upon his expressed or presumed consent. The application may be made on the part of the plaintiff or of the defendant, but the order will only be made where both parties consent, and not against the will of either. Codner v. Hersey, 18 Vesey 468; Hind’s Ch. Prac. 228; 1 Smith’s Ch. Prac. 267.
In New York, on bills filed other than for discovery, the rule is altered by statute, and the complainant is permitted ■to waive the necessity of an answer being made on the oath of the defendant, and in such case the answer shall have no other or greater force as evidence than the bill. 2 Rev. Stat. (ed. 1846) 236, § 77.
But it by no means follows, because the complainant cannot avoid taking the defendant’s answer under oath, that he is therefore at liberty, by the general law of evidence, to impeach his testimony. The rule is by no means well settled, that because a party cannot avoid making an individual his witness, as in case of a subscribing witness, he is therefore at liberty to impeach his veracity. The authorities are in *307 conflict upon this subject. 1 Greenl. Mo., § 443, and cases cited in note 2.
It may be said with truth, in every case where the plaintiff has but a single witness by whom his case at law or in equity can be proved, that the witness is not of the party’s own selection. But the rule forbidding him to impeach his own witness is not therefore dispensed with. But whatever may be the general rule of evidence, the rule in equity, that the complainant shall not impeach the character of the defendant in order to weaken the effect of the answer as evidence, has been too long acted upon to be now overturned upon any supposed ground of convenience or necessity. Hor is it by any means clear that any real benefit would result from such change of practice. Here, as elsewhere, it will probably be found that via trita est tutissima.
Perhaps the most plausible reason in favor of a change of the practice will be found in the fact, that now by statute the parties may offer themselves as witnesses. And as the defendant may discredit the complainant’s evidence by impeaching his character, the complainant should have the like privilege of discrediting the defendant’s answer by impeaching his character. But it must be borne in mind that the liberty of being a witness for himself is a privilege accorded to the complainant, and he can surely ask no greater advantage on that account, nor can he ask to stand in a better position than a disinterested witness. It is obvious, moreover, that as the rule was established and acted upon when the complainant was excluded from being a witness, there is less reason for a change now that the complainant has the benefit of his own testimony.
The evidence which is proposed to be suppressed is incompetent, and must so be treated at the hearing. But it is not in accordance with the practice of the court to suppress testimony as incompetent before the hearing. Williamson v. More, 1 Barb. Sup. C. R. 229.
There is no express rule of this court upon the subject, and I know of no instance where it has been done. Depositions, *308 when objected to as taken upon leading interrogatories, or as scandalous, or for some irregularity in relation to them, are suppressed prior to the hearing, and in such case the witness will be permitted to be re-examined. 2 Daniell’s Ch. Prac. 1183, and note 1.
But as a general rule, there can be no special advantage in suppressing testimony, as incompetent or irrelevant, in advance of the hearing. In some cases it may prove advantageous, but in others it will unavoidably create embarrassment. The question, whether the deposition shall be suppressed, is a matter of discretion. Underhill v. Van Cortlandt, 2 Johns. Ch. R. 345.
As the question touching the admissibility of the evidence is for the first time raised in this court, and the complainant may desire to have the decision reviewed on appeal, it is for the interest of both parties that the complainant should be permitted to proceed with the evidence if he so desire, and that the decision of the question should be reserved till the final hearing.
The motion is therefore denied, but without costs.